UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SHANE COOK, <br> and, <br> KARLA CARO <br><br> Plaintiffs, <br><br> v. <br><br> FAMILY MOTORS, LLC, <br><br> and <br><br> DERRICK RICHARDSON, <br><br> and <br><br> ANTONIO HARBIN, <br><br> and <br><br> BRENDA YOAKUM-KRIZ, <br><br> Defendants. | JURY TRIAL DEMANDED <br><br> Case: 4:21-cv-930 |

## COMPLAINT

Plaintiffs, Shane Cook and Karla Caro (collectively "Plaintiffs"), by and through undersigned counsel, and for their Complaint state as follows:

## INTRODUCTION

1. This is an action for actual damages, punitive damages, costs and attorneys' fees for violations of K.S.A. 50-623, *et seq.* ("KCPA"), which prohibits suppliers from engaging in abusive, deceptive, dishonest and unfair practices against consumers.

2. This is also an action for actual and punitive damages brought by individual consumers for abuse of process.

3. The Defendants listed below, filed a malicious and abusive counterclaim against Plaintiffs in a state court action where Plaintiffs were seeking to vindicate their rights to be free from abusive, deceptive, dishonest and unfair practices. Defendants know that the counterclaim lacks legal merit and lacks factual support. Defendants used and are using this frivolous claim to pressure Plaintiffs into waiving their legal rights. Certain facts related to or forming claims in the state court action are stated herein; however, they are stated as necessary predicates and foundation for Plaintiffs' claims here, not restating those claims as separate grounds for relief in this action.

4. Plaintiffs do not seek injunctive relief or interference with the ongoing state court litigation. Missouri permits ancillary proceedings alleging litigation misconduct as a violation of consumer protection laws, just as Plaintiffs do here. *See e.g. Jackson v. Barton,* 548 S.W.3d 263 (M0. 2018).

5. Missouri further permits some proceedings against an attorney *and* the client in limited circumstances, notably where consumer protection is at issue. *see Jackson v. Barton*, 548 S.W.3d 263 (Mo. 2018).

6. This action further argues that the conduct complained of violates 18 U.S.C. § 1343 and/or 18 U.S. Code § 1951 and is therefore per se unfair, unconscionable and fraudulent within the meaning of the KCPA but does not allege that these federal statutes create a private right of action in and of themselves.

2

## JURISDICTION

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because it involves a question of federal law and supplemental jurisdiction over the state law issues pursuant to 28 U.S.C. § 1367.

8. Venue is appropriate in this court because Defendant directed their illicit conduct at Plaintiffs from Jackson County, Missouri.

9. Plaintiffs demand a jury trial for all issues so triable.

## PARTIES

10. Plaintiff, Shane Cook ("Cook"), is a natural person and was a resident of the state of Kansas at the time of the events alleged below.

11. Plaintiff, Karla Caro ("Caro"), is a natural person and was a resident of the state of Kansas at the time of the events alleged below.

12. Defendant, Family Motors, LLC ("the Dealership") is a Missouri limited liability company, who publicly lists its registered agent as Derrick Richardson of 9009 Manning Ave, Kansas City, MO 64138 and has a business office located at: 8753 E. US 40 Highway, Unit B, Kansas City, MO 64129

13. The Dealership is engaged in the trade or commerce of selling vehicles to the public.

14. The Dealership is a statutory entity, and all acts of the Dealership alleged below were committed by an employee, agent and/or apparent agent of the Dealership.

15. Defendant, Derrick Richardson ("Richardson") is a natural person and a member of the Dealership, believed to be a resident of Missouri, whose address is publicly listed as 9009 Manning Ave, Kansas City, MO 64138.

16. Defendant, Antonio Harbin ("Harbin") is a natural person and a member of the Dealership, believed to be a resident of Missouri, whose address is currently unknown to Plaintiffs but is known to other defendants.

17. Defendant Brenda Yoakum-Kriz ("Ms. Yoakum-Kriz") is an employee Empower Law Firm, LLC and can be served at her publicly listed place of employment at 173 English Landing Dr., Suite 230 Parkville, MO 64152.

## FACTS COMMON TO ALL COUNTS

18. Plaintiffs incorporate all preceding paragraphs here by reference.

The Transaction That Started the Ball Rolling

19. Some time prior to December 19, 2020, the Dealership created an online advertisement that stated that the Dealership had a certain Pontiac G6 (the "Vehicle") for sale.

20. The Dealership intended and/or knew that by placing an advertisement online, that such advertisement would be directed at consumers in Kansas.

21. On or about December 19, 2020, Plaintiffs saw the Dealership's online advertisement from the state of Kansas and contacted the Dealership from Kansas to discuss a possible purchase.

22. Plaintiffs arranged to come to the state of Missouri to look at the Vehicle.

4

23. When Plaintiffs arrived in Missouri, the Dealership provided Plaintiffs with what the Dealership alleged was a Missouri safety inspection report (the "Report").

24. The Report stated that a safety inspection had been conducted on December 1, 2020 by H+H Motors Group of Kansas City, MO.

25. The Report identified no defects on the Vehicle.

26. Plaintiffs ultimately agreed to purchase the Vehicle for $1,150.00.

27. Shortly after purchasing the Vehicle, the Vehicle began having significant problems on the road, leading Caro to pull over, experiencing physical symptoms of a panic attack.

28. The Dealership eventually towed the Vehicle to Defendant's location and claims to have performed some repairs on the Vehicle.

Plaintiffs Hire an Attorney

29. Plaintiffs contacted the undersigned attorney, who noted that the front windshield of the Vehicle had a crack in it that was longer than 3 inches.

30. Pursuant to 11 CSR 50-2.270(5)(D), the Vehicle should not have passed a safety inspection due to the crack in the windshield.

31. Most consumers, especially those from states other than Missouri, would not know the specific requirements to pass a Missouri Safety Inspection.

32. Following this initial assessment, Plaintiffs' attorney offered to settle the matter for a refund of Plaintiffs' money plus a small amount for attorneys' fees (the "First Settlement Demand").

33. The Dealership rejected Plaintiffs' offer of settlement.

Plaintiffs' Attorney Has to Investigate After The Dealership Refuses to Settle Early

34. With early resolution off the table, Plaintiffs' attorney began his investigation in more detail and discovered that H+H Motors Group denied that any safety inspection had been done by H+H Motors Group on the Vehicle.

35. Plaintiffs determined that the Report is a forged document that was created by the Dealership.

36. Plaintiffs determined that no safety inspection was conducted.

37. On or about January 7, 2021, Plaintiffs' attorney sent the Dealership a letter demanding $5,000.00. based on the investigation, legal review and change in the legal theory and increased potential award. (the "Second Settlement Demand")

38. $5,000.00 is less than other experienced, competent attorneys demand for consumer law cases that involve less investigation, less legal work and lower actual damages. *See e.g. Weaver v. Performant Recovery, Inc.*, No. 2:13-cv-2408-JTM, 2014 U.S. Dist. LEXIS 137134, at *2 (D. Kan. Sep. 29, 2014).

39. $5,000.00 was a reasonable demand made in a good faith effort to resolve Plaintiffs' claims.

40. On or about January 13, 2021, the Dealership denied the factual allegations and declined Plaintiffs' offer to settle in a letter signed by Jason Higgs (the "Higgs' Letter"). A true and accurate copy of which is attached as Exhibit A.

41. In the Higgs Letter, the Dealership accused Plaintiffs of trying to "catch unsuspecting people or businesses and take advantage of them," despite (a) having no

evidence to support this accusation and (b) this not stating how this vague accusation could give rise to a legal claim against Plaintiffs.

42. The Dealership has no evidence to support a claim that trying to "catch unsuspecting people or businesses and take advantage of them" is a common practice for either of Plaintiffs.

43. The Dealership is not seeking evidence to prove this trying to "catch unsuspecting people or businesses and take advantage of them" is a common practice for either of Plaintiffs.

The Dealership Threatens to Use Litigation to Blackmail Plaintiffs

44. Nevertheless, the Higgs Letter stated: "Certainly you know that any law suit filed against me will trigger a counter-suit wherein, I will make all available counter claims, particularly if I find that this is a common practice for Mr. Cook."[sic]

45. The Higgs Letter never identifies any specific claim, facts to support a claim or a citation to law from which a legal claim against Plaintiffs could be identified.

46. Since the Higgs Letter does not identify any claims that could be raised, the Dealership was clearly threatening to use litigation as retaliation if Plaintiffs sought to vindicate their claim in court.

47. The Dealership clearly intended Higgs Letter to intimidate Plaintiffs and frighten them so that they abandoned their rights.

48. Plaintiffs determined that the Dealership did not intend to engage in good faith negotiations or resolve Plaintiffs claims outside of court.

Plaintiffs File Suit Despite the Dealership's Threats

7

49. On or about March 25, 2021, Plaintiffs filed a petition in the Circuit Court of Jackson County, Missouri: 2116-CV07101 - Shane Cook et al v Family Motors, LLC (the "State Court Case"). This case is still pending.

50. The Dealership failed to timely file an answer in the State Court Case.

51. On or about August 12, 2021, approximately five months after filing suit and approximately three months after the Dealership's Answer was due, Plaintiffs filed a motion for default judgment in the State Court Case.

52. On or about August 31, 2021, Plaintiffs appeared in person and by counsel before the circuit court of Missouri for a hearing of their motion for default judgment.

53. At the August 31, 2021 hearing, Defendants Richardson and Harbin appeared and purported to represent the Dealership, despite not being licensed to practice law in the State of Missouri.

54. The Dealership later retained the services of Defendant Brenda Yoakum-Kriz, who filed an entry of appearance on or about September 29, 2021.

Defendants Keep their Word and File a Malicious and Abusive Counterclaim

55. On or about October 4, 2021, Defendant Ms. Yoakum-Kriz filed a motion in the State Court Case, seeking leave for the Dealership to file an answer and counter-claim alleging Plaintiffs owed "storage fees" of $35.00 per day starting January 13, 2021 and continuing to accrue.

56. At the time of filing, Ms. Yoakum-Kriz was seeking (and was ultimately permitted) to file a claim against Plaintiffs for over $9,240.00.

57. At no time did the Dealership ask Plaintiffs to agree to storage fees.

58. At no time did the Dealership tell Plaintiffs that the Dealership intended to charge storage fees.

59. At no time did Plaintiffs see a sign or notice at or near the Dealership stating either that storage fees would be charged or stating a rate for storage fees.

60. The Higgs Letter does not mention storage fees, demand payment for storage or even suggest that the Dealership has a claim to fees for storage.

61. At no time prior to October 4, 2021 did any Defendant demand payment from Plaintiffs for storage fees.

62. Defendants entire prior course of dealings, conduct and communication to Plaintiffs is inconsistent with a claim against Plaintiffs for "storage fees."

Defendants' Real Motive

63. On or about October 4, 2021 – and before Defendants filed the counterclaim—Plaintiffs made a good faith effort to reach settlement by sending Defendant a demand for $11,000.00.

64. Between the Second Settlement Demand and Third Settlement Demand, Plaintiffs damages from being without a vehicle had continued to accrue, and Plaintiffs' counsel reasonably expended more hours providing legal services to Plaintiffs.

65. On or about October 21, 2021 a judgment in another case against the Dealership for $10,300.00 in damages and for attorneys' fees of $4,844.14, for a total judgment of $15,144.14 in 2116-CV15348 - Amanda Garwood v Family Motors LLC (the "Garwood Case") a true and accurate copy of which is attached hereto as Exhibit B.

66. The plaintiff in the Garwood case raised analogous claims to Plaintiffs, in that the Garwood Plaintiff sought claims for violations of Missouri's consumer protection laws, §407.020 RSMo *et seq.*

67. However, unlike the KCPA, the Missouri Consumer Protection Act, § 407.020 *et seq.*, does not provide for a statutory penalty.

68. Plaintiffs' settlement demand was reasonable as compared to similar consumer law demands and awards, including the judgment entered against the Dealership in the Garwood Case.

69. On or about October 8, 2021, Ms. Yoakum-Kriz filed a motion for leave to file out of time, seeking to file a counterclaim for "storage fees" and including suggestions in support of her motion alleging "Plaintiffs instead have made unreasonable demands." (A true and accurate copy of the proposed Answer and Counterclaim is attached hereto as Exhibit C).

70. Defendants were granted leave to file the counterclaim, which Defendants amended and then refiled. A true and accurate copy of Defendants' Answer and Counterclaim filed November 19, 2021 is attached hereto as Exhibit D.

71. The amount demanded in Ms. Yoakum-Kriz' counterclaim cannot be supported by the facts or law.

72. Ms. Yoakum-Kriz' counterclaim in the State Court Case is calculated to match and eventually exceed Plaintiffs' Third Settlement demand.

73. Further, on or about October 5, 2021, Ms. Yoakum-Kriz sent Plaintiffs' counsel an email stating in relevant part about her client/clients, "they are willing to not

pursue their claim for vehicle storage fees against your clients provided that your clients dismiss this case with prejudice and remove their vehicle from my client's premises." A true and accurate copy of this email is attached hereto as Exhibit E.

74. Ms. Yoakim-Kriz' counterclaim and statements are an attempt to create an "off-setting penalty" for Plaintiffs' good faith settlement demand.

Defendants Know the Counterclaim Lacks Merit and Was Filed for an Improper Purpose

75. Ms. Yoakum-Kriz' counterclaim in the State Court Case was not a claim raised by the Dealership at any time prior to October 4, 2021.

76. On information and belief, Ms. Yoakum-Kriz' counterclaim in the State Court Case was thought up by Ms. Yoakum-Kriz and presented to the Dealership after the Dealership asked her to find a way to force Plaintiffs to abandon their claims. This fact will likely have direct evidentiary support from emails and/or other written communications between the defendants that can be obtained in discovery.

77. All defendants knew and/or must have known that Ms. Yoakum-Kriz' counterclaim in the State Court Case lacks legal and factual merit.

78. On information and belief, Defendants discussed and formed an agreement to file Ms. Yoakum-Kriz' counterclaim in the State Court Case for multiple unauthorized and inappropriate purposes, including but not limited to:

    a. Retaliate against Plaintiffs for exercising their legal rights; and

    b. Increase the cost of litigation for Plaintiffs; and

    c. Force Plaintiffs to dismiss their claims.

11

79. All Defendants knew and intended that the counterclaim and communications about the counterclaim would be communicated to Plaintiffs via email and phone lines, which constitute interstate wire communications.

80. All Defendants engaged in a scheme to defraud Plaintiffs by use of transmissions made over wire communications in interstate commerce when defendants agreed to use email communications as part of the scheme.

81. All defendants used a color of official right to affect the movement of Plaintiffs' money and the vehicle at issue here by extortion when defendants used the color of official right to file a malicious counterclaim for the purpose of denying Plaintiffs' their rights.

## COUNT I: PIERCING THE VEIL OF FAMLY MOTORS, LLC

82. Plaintiffs incorporate all preceding paragraphs here by reference.

83. Defendants Richardson and Harbin are the sole members of the Dealership.

84. Defendants Richardson and Harbin have complete control and domination of the Dealership, including not only finances, but of policy and business practices, including those alleged above, such that the Dealership has no separate mind, will or existence of its own, which allegation is specifically limited to the acts related to the filing and continuation the counterclaim raised in the State Court Case.[1]

85. Defendants Richardson and Harbin used their control of the Dealership to commit or to compel the Dealership to commit the acts complained of herein, which acts

---

[1] Plaintiffs neither allege nor concede that the Dealership has ever had a separate existence. It is simply immaterial to Plaintiffs' cause of action here and so Plaintiffs limit their request to relief to that necessary to protect their interests in this litigation.

12

constitute fraud, dishonest acts, unjust acts, violations of statutory duties and other positive duties.

86. Ms. Yoakum-Kriz repeatedly represented to Plaintiffs' counsel that the Dealership lacks the financial resources to consider a significant settlement offer.

87. Ms. Yoakum-Kriz repeatedly referenced her "clients," meaning Defendants Richardson and Harbin instead of her "client," indicating that Ms. Yoakum-Kriz also recognizes that there is no real distinction between the Dealership and Defendants Richardson and Harbin.

88. On information and belief, Defendants Richardson and Harbin failed to adequately capitalize the Dealership to ensure that the Dealership could afford to finance its liabilities.

89. On information and belief, Defendants Richardson and Harbin's decisions and failure to adequately capitalize the Dealership motivated Defendants Richardson and Harbin to resort to the litigation tactics alleged above, causing Plaintiffs harm.

90. The final decision to file a false claim against Plaintiffs in order to pressure Plaintiffs into dropping their claims was made by Defendants Richardson and Harbin.

91. At least for the purposes of this suit, the Dealership lacks a separate identity, justifying piercing the veil of the Dealership and holding Defendants Richardson and Harbin jointly and severally liable for the acts of the Dealership.

WHEREFORE, for the reasons stated above, Plaintiffs pray this Court exercise its equitable authority and pierce the veil of the Dealership, finding Defendants

13

Case 4:21-cv-00930-RK   Document 1   Filed 12/24/21   Page 13 of 19

Richardson and Harbin jointly and severally liable for the acts of the Dealership, and for such other relief as the Court deems just and proper.

## COUNT II: ABUSE OF PROCESS BY ALL DEFENDANTS

92. Plaintiffs incorporate all preceding paragraphs here by reference.

93. Missouri recognizes claims for abuse of process. *Wessler v. Wessler*, 610 S.W.2d 650, 652 (Mo. Ct. App. 1980).

94. Abuse of process occurs when "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." *Boyer v. Carondelet Sav. & Loan Asso.*, 633 S.W.2d 98, 101 (Mo. Ct. App. 1982).

95. Filing a claim authorized by law but for an improper purpose such as extortion is an abuse of process. *White v. Scarritt*, 111 S.W.2d 18 (1937).

96. Filing a claim to increase the cost and burden of litigation is an abuse of process. *Nat'l Motor Club, Inc. v. Noe*, 475 S.W.2d 16, 24 (Mo. 1972).

97. Defendants filed and/or caused to be filed a counterclaim in the State Court Case for unauthorized purposes, including but not limited to retaliation against Plaintiffs, increasing Plaintiffs' costs of litigation and extorting a dismissal of Plaintiffs' claims.

98. Defendants caused Plaintiffs damages in the form of increased legal costs in the State Court Case by filing a counterclaim and using the existence of that counterclaim to attempt to extort a dismissal from Plaintiffs.

99. Plaintiffs' legal costs in the State Court Case continue to accrue and are reasonably likely to exceed $75,000.00 as attorneys' fees in consumer law cases that proceed to litigation often meet or exceed that amount in Missouri State Courts.

WHEREFORE, for the reasons stated above, Plaintiffs pray this Court enter a judgment in their favor for their pecuniary damages in the State Court Case, entered jointly and severally against the Dealership, Richardson, Harbin, and Ms. Yoakum-Kriz, and for such other relief as the Court deems just and proper.

**COUNT III: VIOLATIONS OF K.S.A. 50-623, ET SEQ. BY ALL DEFENDANTS**

100. Plaintiffs incorporate all preceding paragraphs here by reference.

101. The Dealership advertised to Plaintiffs through interstate commerce while Plaintiffs were in Kansas, so Kansas' consumer law applies to Plaintiffs' claims.

102. Plaintiffs are residents of Kansas and reside in the state of Kansas.

103. All Defendants are residents of Missouri so complete diversity of parties exists.

104. Kansas passed the KCPA to protect Kansas' "consumers from suppliers who commit deceptive and unconscionable practices." K.S.A. 50-623(b).

105. Plaintiffs purchased the Vehicle for personal, family and household purposes and are a consumer as defined by K.S.A. § 50-624(b).

106. The Dealership, "in the ordinary course of business, solicits, engages in or enforces consumer transactions" and is therefore a supplier as defined by K.S.A. § 50-624(l).

107. Defendant Ms. Yoakum-Kriz enforces consumer transactions in the ordinary course of her business, so she is a supplier as defined by K.S.A. § 50-624(1).

108. K.S.A. § 50-626 declares it unlawful for any supplier to engage in deceptive acts and practices, which includes "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact," (K.S.A. § 50-626(2)) and "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." (K.S.A. § 50-626(3)).

109. "No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction." K.S.A. § 50-627. K.S.A. § 50-627.

110. Plaintiffs are poor.

111. Defendants knew and/or intended that Missouri State Courts' permissive attitude would allow them to raise and pursue a patently frivolous claim when raised as a counterclaim.

112. Defendants took advantage of Plaintiffs inability to obtain an early dismissal or other resolution of the patently false counterclaim to gain an unconscionable advantage over Plaintiffs.

113. The "price" Defendants allege Plaintiffs owe for "storage fees" grossly exceeds the value of these "services."

114. Plaintiffs cannot obtain a material benefit from the "storage" of the Vehicle.

115. Defendants asserted the existence of an entirely one-sided agreement for "storage fees" and failed to take any measures to protect Plaintiffs' interests.

116. Defendants know that Plaintiffs do not owe any amount of money for "storage fees" to any individual Defendant or collective group of Defendants.

117. Even if Plaintiffs did owe storage fees, Defendants could have asserted a lien, acquired title to the vehicle and resold it to cover these fees. *see e.g. Kickham v. Gardocki*, 966 S.W.2d 361 (Mo. Ct. App. 1998).

118. A claim for quantum meruit will be barred or reduced if the claiming party fails to take reasonable steps to mitigate its damages. *Tribus, LLC v. Greater Metro, Inc.*, 589 S.W.3d 679, 704 (Mo. Ct. App. 2019).

119. Even if Plaintiffs had owed storage fees to some person(s), Plaintiffs could not owe any Defendant more than $1,150.00.

120. Defendants' claim for over $9,000.00 in "storage fees" is patently false.

121. All Defendants have actual and/or imputed knowledge that the amount claimed in the counterclaim is false.

122. Because the attempted extortion was performed under a color of rights, the extortion was a violation of 18 U.S.C. § 1951.

123. Because the attempted extortion was also a scheme to defraud and obtain money or property by false pretenses that Defendants transmitted and/or caused to be transmitted by means of wired communication in interstate commerce, the acts of Defendants violated 18 U.S.C. § 1343.

124. Because the acts of Defendants violated federal criminal provisions, they are per se unfair, unconscionable and fraudulent in violation of the KCPA.

125. The acts of Defendants are unfair, unconscionable and fraudulent in violation of the KCPA.

126. K.S.A. § 50-634 gives Kansas consumers a private right of action against suppliers who violate the KCPA for actual damages or a statutory penalty of up to $10,000.00.

127. K.S.A. § 50-634(e) grants Plaintiffs a claim for reasonable attorneys' fees in bringing this action.

128. Plaintiffs may also seek punitive damages for violations of the KCPA. *Equitable Life Leasing Corp. v. Abbick*, 243 Kan. 513, 757 P.2d 304 (1988).

129. As a direct and proximate result of the acts of Defendant complained of above, Plaintiffs have suffered direct economic damages as measured by the increased cost of litigation in the State Court Case, which damages continue to accrue and can be reasonably projected to exceed $75,000.00.

130. As a direct and proximate result of the acts of Defendant, Plaintiffs have suffered emotional damages in an amount to be determined by a jury.

131. Defendant is liable to Plaintiffs for an amount that is expected exceed $75,000.00.

WHEREFORE, Plaintiffs pray this court enter judgment in their favor, jointly and severally against the Dealership, Richardson, Harbin, and Ms. Yoakum-Kriz, for:

a) For actual damages in an amount determined by a jury; or

b) For the statutory amount of $10,000.00; and

c) Punitive damages in an amount determined by a jury; and

d) Reasonable costs, attorney's fees as determined by the Court; and

e) For such other relief as this court finds just and proper

          Respectfully submitted,

Dated: December 24, 2021         **THE WILLISTON LAW FIRM, LLC**

By: *Keith N. Williston*
Keith N. Williston MO #69433
201 SE Williamsburg Dr
Blue Springs, MO 64014
Tele: (913) 207-5450
Fax: (816) 492-8212
WillistonKeith@yahoo.com

**Attorney for Plaintiffs**