# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| SHANE COOK, KARLA CARO, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:21-cv-00930-RK |
| | ) |
| FAMILY MOTORS, LLC, BRENDA YOAKUM-KRIZ, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Now before the Court is Defendant Brenda Yoakum-Kriz's motion to dismiss. (Doc. 31.) The motion is fully briefed. (Docs. 32, 38, 39.) For the reasons explained below, the motion is **GRANTED**. Defendant Yoakum-Kriz is **DISMISSED without prejudice**.[1]

## I.  Background

Plaintiffs Shane Cook and Karla Caro allege in December of 2020 they saw an online advertisement from Defendant Family Motors, LLC ("the dealership"), for the sale of a Pontiac G6 vehicle ("the vehicle"). (Doc. 28 at ¶¶ 19, 21.) When Plaintiffs went to look at the vehicle, the dealership provided to Plaintiffs a Missouri safety inspection report that stated a safety inspection had been conducted on December 1, 2020, by M+H Motors Group of Kansas City, Missouri, and identified no defects on the vehicle. (*Id.* at ¶¶ 24-26.) Plaintiffs ultimately purchased the vehicle for $1,150. (*Id.* at ¶ 27.) Shortly after they purchased the vehicle, however, it had "significant problems on the road" and Plaintiff Caro had to pull it over and leave it "in a public place in or near the city of Merriam, Kansas." (*Id.* at ¶¶ 28, 29.) Plaintiff Caro contacted the dealership and arranged for the dealership to tow the vehicle to its location. (*Id.* at ¶¶ 30, 31.)

Plaintiffs engaged counsel who began advocating on their behalf. (*See id.* at ¶ 32.) Plaintiffs believed the vehicle should not have passed a safety inspection under Missouri law because of a crack in the windshield, that the dealership forged the safety inspection, and that no

---

[1] Also pending before the Court is Plaintiffs' motion for summary judgment as to their claims against Defendant Yoakum-Kriz. (Doc. 44.) Because the Court grants Defendant Yoakum-Kriz's motion to dismiss, however, Plaintiffs' motion for summary judgment is **DENIED as moot**. In addition, Plaintiffs have filed a motion for default judgment against Defendant Family Motors, LLC. (Doc. 43.) The motion for default will be ruled on at a later time.

safety inspection had been conducted. (*Id.* at ¶¶ 33, 37-39.) Plaintiffs allege the dealership rejected their first and second demands to settle the matter. (*Id.* at ¶¶ 35-36, 40, 43.)

On March 25, 2021, Plaintiffs filed a still-pending lawsuit in Missouri state court against the dealership. (*Id.* at ¶ 52.) On September 29, 2021, Defendant Yoakum-Kriz filed an entry of appearance on behalf of the dealership in that state court action. (*Id.* at ¶ 57.)

On October 4, 2021, the dealership (through Defendant Yoakum-Kriz) filed a motion seeking leave to file an answer and counterclaim against Plaintiffs for "storage fees" of $35 per day starting January 13, 2021, and continuing to accrue, and specifically $9,240 at the time of filing. (*Id.* at ¶¶ 58, 59.) The dealership was granted leave to file the answer and counterclaim in the state court proceedings and filed an answer and counterclaim for storage fees on November 19, 2021. (*Id.* at ¶¶ 72, 73.) Plaintiffs allege "[a]t no time did the Dealership ask Plaintiffs to agree to storage fees" or "tell Plaintiffs that the Dealership intended to charge storage fees." (*Id.* at ¶¶ 60, 61.) Plaintiffs allege they did not see a sign or notice at the dealership stating storage fees would be charged (or a rate for storage fees) and that at no time did the dealership "demand payment for storage or even suggest that the Dealership has a claim to fees for storage." (*Id.* at ¶¶ 62-64.) Rather, Plaintiffs allege the counterclaim in the state court proceeding "is calculated to match and eventually exceed Plaintiffs' Third Settlement demand" and is "an attempt to create an 'off-setting penalty' for Plaintiffs' good faith settlement demand." (*Id.* at ¶¶ 75, 77.)

In their Second Amended Complaint, Plaintiffs assert two claims against Defendant Yoakum-Kriz: (1) abuse of process (Count Two), and (2) violation of the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623 *et seq.* (Count Three).[2] Defendant Yoakum-Kriz argues Plaintiffs' claims against her must be dismissed because Plaintiffs' Second Amended Complaint fails to state a claim and, in the alternative, the Court should abstain from hearing this matter and dismiss Plaintiffs' claims under the *Colorado River* doctrine.

Further facts are set forth as necessary.

---

[2] On May 25, 2022, in response to the Court's second order to show cause under Rule 4(m) of the Federal Rules of Civil Procedure as to Plaintiffs' failure to timely provide proof of service for Defendants Derrick Richardson and Antonio Harbin, Plaintiffs filed a notice of voluntary dismissal. (Doc. 49.) In their notice of voluntary dismissal, pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure, Plaintiffs voluntarily dismissed without prejudice (1) Count I of the Second Amended Complaint asserted to "pierce the veil" of Defendant Family Motors, LLC, and (2) their claims against Defendants Richardson and Harbin. (*Id.*; *see* Doc. 50.)

## II. Legal Standard

The federal rules provide that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may challenge a pleading's legal sufficiency in a motion to dismiss. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) (internal quotation marks and citation omitted). While a complaint does not need to include detailed factual allegations, the complaint must allege more than a sheer possibility that a defendant acted unlawfully to survive a motion to dismiss. *Id.* (citation omitted). When considering a motion to dismiss for failure to state a claim, the well-pled allegations in the complaint must be accepted as true and construed in the light most favorable to the non-moving party. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

## III. Discussion

### A. Count Two – Abuse of Process

In Count Two, Plaintiffs assert an abuse of process claim against Defendant Yoakum-Kriz based upon her filing, on behalf of the dealership in the underlying state court action, a counterclaim against Plaintiffs for storage fees. Plaintiffs allege Defendant Yoakum-Kriz filed the counterclaim on behalf of the dealership "for unauthorized purposes, including . . . retaliation against Plaintiffs, increasing Plaintiffs' costs of litigation and extorting a dismissal of Plaintiffs' claims," and allege that the dealership's claim for storage fees lacks a basis in fact and law. (Doc. 28 at ¶¶ 60-65, 74, 100.)

Under Missouri law, a claim for abuse of process requires: "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 861 n.4 (8th Cir. 2002) (quoting *Stafford v. Muster*, 582 S.W.2d 670, 678 (Mo. banc 1979)). As the Missouri Court of Appeals has recognized, "[t]he essence of a claim for abuse of process is the

3

Case 4:21-cv-00930-RK    Document 52    Filed 05/26/22    Page 3 of 8

use of process for some collateral purpose." *Vescovo v. Kingsland*, 628 S.W.3d 645, 662 (Mo. Ct. App. 2020) (citation and quotation marks omitted).

A claim for abuse of process must allege facts showing "process has been used to accomplish some unlawful end or to compel the opposite party to do some collateral thing which he or she could not be compelled to do legally." *Id.* at 663 (cleaned up). A plaintiff cannot be liable for abuse of process when he or she "has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil a motive he possessed at the time." *Id.* (cleaned up). In other words, so long as "the action is confined to its regular function," a plaintiff is not liable for abuse of process "even if the plaintiff had an ulterior motive in bringing the action, or if the plaintiff knowingly brought the suit upon an unfounded claim." *Id.* (cleaned up). Stated differently,

> [a]n abuse of process claim is not appropriate where the action is confined to its regular function even if the plaintiff had an ulterior motive in bringing the action, or if the plaintiff knowingly brought the suit upon an unfounded claim. It is where the claim is brought not to recover on the cause of action stated, but to accomplish a purpose for which the process was not designed that there is an abuse of process.

*Stone v. J&M Secs., LLC*, No. 4:20 CV 352 SPM, 2020 WL 5909788, at *8 (E.D. Mo. Oct. 6, 2020) (citation and quotation marks omitted); *see also Pipefitters Health & Welfare Trust v. Waldo R., Inc.*, 760 S.W.2d 196, 198-99 (Mo. Ct. App. 1988) ("It must be shown that process has been used to accomplish an unlawful end or to compel the defendant to do something which he could not be compelled to do legally. No liability attaches where a party has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil a motive he possessed at the time.") (citation omitted); *Herring v. Behlmann*, 734 S.W.2d 311, 313 (Mo. Ct. App. 1987) ("the foundation of a suit for abuse of process is that the previous claim was brought for a collateral purpose") (citation omitted).

In opposing Defendant Yoakum-Kriz's motion to dismiss, Plaintiffs rely on *Owen v. Owen*, 642 S.W.2d 410 (Mo. Ct. App. 1982). In *Owen*, the Missouri Court of Appeals affirmed a jury verdict in favor of a defendant's counterclaim for abuse of process. The facts in *Owen* are illustrative here. On September 13, 1979, Harley Owen filed a petition for dissolution of marriage against his then-wife, Mary Owen. *Id.* at 412. Almost four months later, on January 10, 1980, H.R., Harley's brother, filed the lawsuit underlying *Owen* against Mary and Harley for the assignment of shares of bank stock to him and repayment of a loan. *Id.* Mary filed a counterclaim against H.R. for abuse of process. *Id.*

4

At trial, Mary produced evidence that at or near the time Harley's petition for dissolution was filed, he gave H.R. more than $70,000 in cash and merchandise. *Id.* at 414. These dissolution proceedings were pending "with apparently no settlement thereof in sight" when H.R. filed the lawsuit underlying *Owen* against Mary. *Id.* H.R. told Mary shortly after filing the *Owen* lawsuit that "if she would accept $50,000 to terminate the dissolution proceedings," he would drop the lawsuit filed against her and her then-husband, Harley. *Id.* The court of appeals found this evidence was sufficient to support the jury's verdict in favor of Mary on her counterclaim for abuse of process against H.R. Specifically, the court of appeals concluded the evidence showed that "H.R. wanted Mary to settle the dissolution action upon his or Harley's terms" and "[i]n exchange for Mary's capitulation, H.R. would dismiss his action," thus demonstrating "the true and basic purpose of H.R.'s lawsuit, i.e., to coerce Mary into settling the dissolution action in a manner which she could not be legally forced to do," that is, to "capitulate in the dissolution action upon the terms dictated by H.R." *Id.*

Here, though, Plaintiffs only allege Defendant Yoakum-Kriz, representing the dealership in the underlying state court action, filed a counterclaim for storage fees, albeit a counterclaim Plaintiffs assert lacks any basis in fact or law. Additionally, Plaintiffs allege Defendant Yoakum-Kriz filed the counterclaim after communicating to Plaintiffs' counsel in the underlying state court case that the dealership would waive its claim for storage fees if Plaintiffs dismissed the state court action with prejudice and removed the vehicle from the dealership's property. (Doc. 28 at ¶ 76.)[3] Plaintiffs argue under *Owen* their factual allegations are sufficient to support a claim for abuse of process against Defendant Yoakum-Kriz. *Owen* is easily distinguishable, however. As explained above, in *Owen* the court found sufficient evidence to support a jury verdict finding abuse of process where the plaintiff filed the instant lawsuit to coerce the defendant into settling an unrelated and unconnected dissolution action pending between a third-party and the defendant on the plaintiff's terms. Here, though, Plaintiffs allege Defendant Yoakum-Kriz extended or communicated what was effectively a settlement offer that the dealership would not pursue a claim

---

[3] Plaintiffs' reliance on any allegations pertaining only to the dealership's actions, particularly those prior to Defendant Yoakum-Kriz's involvement in the underlying state court case, is unavailing here because Plaintiffs have individually sued Defendant Yoakum-Kriz for abuse of process. Thus, Plaintiffs must set forth sufficient facts alleging Defendant Yoakum-Kriz is herself liable for abuse of process. Facts tending to show the dealership could be liable for abuse of process are not sufficient here, and the instant motion to dismiss does not concern any separate claim Plaintiffs assert against the dealership.

5

for storage fees if Plaintiffs dismissed the state court lawsuit and removed their vehicle from the dealership's premises. Regardless of the merits of the dealership's claim to storage fees (which Plaintiffs do not allege has been resolved in the state court action), Plaintiffs' allegations support no reasonable inference Defendant Yoakum-Kriz filed a counterclaim that was intended for some improper and collateral purpose outside the confines of the state court litigation initiated and pursued by Plaintiffs against the dealership.[4]

In *National Motor Club of Mo., Inc. v. Noe*, 475 S.W.2d 16, 24 (Mo. 1972) (Div. 2), a division of the Missouri Supreme Court reversed the dismissal of a defendant's counterclaim for abuse of process where the defendants alleged the plaintiff filed three separate lawsuits against them in other states:

> to harass defendants by a multiplicity of litigation and drive them out of business; to force [a third-party]'s agents or representatives to cease employment with [defendant] and to re-enter [plaintiff's] employment or one of its affiliates; to coerce those performing services . . . to cease doing so for [the third party], and to commence such services for [plaintiff] or one of its affiliates; to interfere with [the third-party]'s customer relationships, to prolong litigations and to financially bankrupt defendants, to destroy competition and to interfere with contractual relationships between [the third party] and its customers, its officers, agents, employees and independent contractors; to interfere with [the third party]'s rights to engage in its business in Arkansas and to engage in competition with [plaintiff] in a lawful manner; and to prevent defendants from being able to engage in [the third party]'s business, or making a living through such business; all of which acts were alleged to be collateral and were ulterior motives [to plaintiff's lawsuit against defendants seeking damages and equitable relief asserting claims of unfair competition].

*Id.* at 24. The court concluded the "allegations of ultimate facts . . . [plaintiff]'s other suits were brought for ulterior motives, and for collateral purposes other than for recovery of judgments" supported a claim for abuse of process. *Id.* Plaintiffs' allegations here fail to allege facts supporting a reasonable inference Defendant Yoakum-Kriz's filing of the counterclaim seeking storage fees was for any collateral purpose existing beyond the confines of the state court litigation Plaintiffs initiated and are pursuing against the dealership. *Cf. Guirl v. Guirl*, 708 S.W.2d 239, 245-46 (Mo. Ct. App. 1986) (affirming judgment in favor of abuse-of-process plaintiff where

---

[4] As the caselaw cited above explains, an abuse of process claim under Missouri law requires a collateral purpose outside the confines of litigation. Were Plaintiffs' framing of an abuse-of-process claim under Missouri law correct, a plaintiff would always have a separate abuse-of-process claim against a defendant who files a counterclaim and includes the counterclaim in settlement negotiations. A claim for abuse of process under Missouri law requires something more.

abuse-of-process defendants maintained the cause of action after the abuse-of-process plaintiff tendered full payment of the notes, the equivalent relief the abuse-of-process defendants would have received had the court granted the relief they sought). Accordingly, the Court finds Plaintiffs' Second Amended Complaint fails to state a claim for abuse of process against Defendant Yoakum-Kriz, and therefore the motion to dismiss is **GRANTED** as to Count Two.

B. Count Three – Kansas Consumer Protection Act Claim

Next, in Count Three of the Second Amended Complaint, Plaintiffs assert a claim against Defendant Yoakum-Kriz under the Kansas Consumer Protection Act ("KCPA"), Kan. Stat. Ann. § 50-623 *et seq*. As Plaintiffs set forth in their opposition to Defendant Yoakum-Kriz's motion to dismiss, and as best as the Court can discern from Plaintiffs' Second Amended Complaint, Plaintiffs allege Defendant Yoakum-Kriz "committed unfair, unconscionable and fraudulent acts [under the KCPA] when she invented a fraudulent debt to try to enforce [i.e., the storage fees]." (Doc. 13 at 6.) In their Second Amended Complaint, Plaintiffs specifically refer to Kan. Stat. Ann. §§ 50-626 and 50-627, prohibiting "supplier[s]" from "engag[ing] in any deceptive act or practice in connection with a consumer transaction" and "engag[ing] in any unconscionable act or practice in connection with a consumer transaction." §§ 50-626(a), 50-627(a), respectively. Plaintiffs allege Defendant Yoakum-Kriz "knew and/or intended that Missouri State Courts' permissive attitude would allow [the dealership] to raise and pursue a patently frivolous claim [for storage fees] when raised as a counterclaim." (Doc. 28 at ¶ 114.) Defendant Yoakum-Kriz argues Plaintiffs fail to state a claim under the KCPA against her because Plaintiffs do not allege she engaged in a consumer transaction within the state of Kansas.

The KCPA defines "consumer transaction" as "a sale, lease, assignment or other disposition for value of property or services within this state . . . or a solicitation by a supplier with respect to any of these dispositions." Kan. Stat. Ann. § 50-624(c). In *State ex rel. Miller v. Midwest Service Bureau of Topeka, Inc.*, 623 P.2d 1343 (Kan. 1981), cited in support by Plaintiffs in opposing Defendant Yoakum-Kriz's motion to dismiss, the Kansas Supreme Court held independent debt collectors may fall under the KCPA's definition of "supplier" if: (1) "[t]he debt sought to be enforced came into being as a result of a consumer transaction;" (2) "[t]he parties to the original consumer transaction were a 'supplier' and a 'consumer' as defined in the act;" and (3) "[t]he conduct complained of . . . occurred during the collection of, or an attempt to collect, a

debt which arose from the consumer transaction and was owed by the consumer to the original supplier." *Id.* at 1349.

The "consumer transaction" Plaintiffs attribute to Defendant Yoakum-Kriz as a "supplier" under the KCPA is the "invent[ion of] a fraudulent debt." Plaintiffs allege no facts indicating this specifically occurred "within th[e] state" of Kansas. *See* § 50-624(c) (defining consumer transactions as the "sale, lease, assignment, or other disposition of property or services within this state"). Additionally, to the extent Plaintiffs attempt to bootstrap Defendant Yoakum-Kriz's actions in "inventing a fraudulent debt to try to enforce" to the dealership's online advertisement, this argument also fails. Plaintiffs allege they viewed the advertisement in Kansas, thus satisfying KCPA requirement of a "solicitation by a supplier [in Kansas] with respect to [a sale, lease, assignment or other disposition of value of property or services]." However, Plaintiffs' Second Amended Complaint alleges no facts under which the Kansas Supreme Court's decision in *Miller* would apply to Defendant Yoakum-Kriz's involvement as alleged by Plaintiffs. In other words, to the extent Plaintiffs allege Defendant Yoakum-Kriz was attempting to enforce a "fraudulent debt" (i.e., the storage fees), the Second Amended Complaint contains no factual allegations under *Miller* that the storage fees "came into being as a result of a consumer transaction" or "arose from the consumer transaction." Accordingly, the Court finds Plaintiffs' Second Amended Complaint fails to state a claim under the KCPA against Defendant Yoakum-Kriz, and therefore the motion to dismiss is **GRANTED** as to Count Three.[5]

## IV. Conclusion

For the reasons explained above, Defendant Brenda Yoakum-Kriz's Rule 12(b)(6) motion to dismiss (Doc. 31) is **GRANTED**, and Defendant Yoakum-Kriz is **DISMISSED without prejudice**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: May 26, 2022

---

[5] Because the Court finds Plaintiffs failed to state a claim against Defendant Yoakum-Kriz, the Court need not and does not address Defendant's argument the *Colorado River* abstention doctrine applies in this case.