IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SHANE COOK, KARLA CARO, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:21-cv-00930-RK |
| ) | |
| FAMILY MOTORS, LLC, ) | |
| ) | |
| Defendant. ) | |

# ORDER

This is a diversity case[1] seeking damages under state law for abuse of process and violation of the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-523, *et seq*. The instant federal case has its roots in a separate lawsuit currently pending in the Circuit Court of Jackson County, Missouri,[2] also filed by Plaintiffs against Defendant Family Motors, LLC ("Family Motors"). Now pending before the Court in this case is Plaintiffs' motion for default judgment against the sole-remaining defendant, Family Motors.[3] (Doc. 43.) While Plaintiffs' motion for default judgment was pending, Plaintiffs also filed a motion to stay the instant case pending resolution of the separate action pending in state circuit court. (Doc. 55.) After careful consideration and for the reasons explained below, Plaintiffs' motions for default judgment and a stay are **DENIED**, and this case is **DISMISSED**.

## I. Procedural Posture

Plaintiffs filed this federal lawsuit against Family Motors on January 24, 2021. (Doc. 1.) On March 21, 2022, Plaintiffs filed a return of service indicating that Family Motors was served on March 8, 2022, with service upon an "employee/person in charge" of Family Motors. (Doc.

---

[1] Although the basis for the Court's subject matter jurisdiction was initially unclear from Plaintiff's complaint, Plaintiffs' second-amended complaint (filed in response to an order to show cause regarding the Court's jurisdiction) appears to adequately assert federal jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). (*See* Doc. 28 at 2-3.)
[2] *Cook v. Family Motors, LLC*, No. 2116-CV07101 (Jackson Cty. Cir. Ct.).
[3] In addition to Family Motors, Plaintiffs filed this lawsuit against three other individuals: Derrick Richardson, Antonio Harbin, and Brenda Yoakum-Kriz. On May 25, 2022, Plaintiffs voluntarily dismissed their claims against Defendants Richardson and Harbin pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure. (Docs. 49, 50.) And on May 26, 2022, the Court granted Defendant Yoakum-Kriz's motion to dismiss for failure to state a claim. (Doc. 52.)

20.) On April 8, 2022, Plaintiffs filed a second return of service – following Plaintiffs' filing of a first- and second-amended complaint on March 25, 2022, and April 1, 2022, respectively (Docs. 24, 28) – indicating that Family Motors was served a second time, this time by service on the Missouri Secretary of State as an agent for Family Motors. (Doc. 30.)

On April 20, 2022, after Family Motors failed to file an answer or otherwise respond, Plaintiffs filed a motion for clerk's entry of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Doc. 34.) A clerk's entry of default was accordingly entered on May 10, 2022. (Doc. 41.) Plaintiffs filed the instant motion seeking a default judgment against Family Motors on May 20, 2022. (Doc. 43.) While Plaintiffs' motion for default judgment was pending, on July 22, 2022, Plaintiffs filed a motion to stay this case pending resolution of the underlying state case involving the same parties. (Doc. 55.)

## II. Discussion

### A. Plaintiffs' Motion for Default Judgment

The Federal Rules of Civil Procedure prescribe a two-step procedure for obtaining a default judgment against a defendant who does not appear or respond after being properly served with process. *See* Rule 55(a)-(b). First, when a party "has failed to plead or otherwise defend . . . the clerk must enter the party's default." Rule 55(a); *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998) (entry of default by the clerk must precede grant of default judgment under Rule 55(b)). Second, Rule 55(b) authorizes the clerk or court to enter a default judgment. If the judgment sought is not for a sum certain, a "party must apply to the court for default judgment." Rule 55(b)(2). Rule 55 provides that the court may conduct hearings if necessary to conduct an accounting; determine the amount of damages; establish the truth of any allegation by evidence; or investigate any other matter. *Id.*

As noted above, the Clerk previously entered default against Family Motors. Here, Plaintiffs do not seek a "sum certain," and they must therefore apply to the Court for default judgment. (*See* Doc. 28 at 18-20 (seeking actual damages, punitive damages, costs and attorney's fees, and a statutory penalty up to $10,000 under K.S.A. § 50-634)); *AGCO Fin., LLC v. Littrell*, 320 F.R.D. 45, 48 (D. Minn. 2017) (recognizing a "sum certain" for purposes of default judgment means "there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default") (citations omitted); *Assist Fin. Servs., Inc. v. Freight One Transp., Inc.*, No. 4:20-Cv-4015-LLP, 2020 WL 4673317, at * (D.S.D. Aug. 12, 2020) (claim for "reasonable

attorney's fees" is not a sum certain and therefore plaintiff had to apply to the court for default judgment).

"A default judgment entered by the court binds the party facing the default as having admitted all of the well-pleaded allegations in the plaintiff's complaint." *Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004) (citations omitted). "Upon default, the factual allegations of a complaint (except those relating to the amount of damages) are taken as true, but it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (citation and quotation marks omitted); *accord Marshall v. Baggett*, 616 F.3d 849, 852-53 (8th Cir. 2010) ("it is incumbent upon the district court to ensure that the unchallenged facts constitute a legitimate cause of action prior to entering final judgment") (citation and quotation marks omitted). To enter default judgment in favor of Plaintiffs against Family Motors in this case, then, the Court must be satisfied that, accepting as true all well-pleaded facts in Plaintiffs' amended complaint, Plaintiffs have asserted legitimate causes of action for abuse of process and violation of the KCPA against Family Motors.

1.  **Factual Allegations in Plaintiffs' Amended Complaint**

In December of 2020, Plaintiffs Shane Cook and Karla Caro saw an online advertisement from Family Motors regarding the sale of a Pontiac G6 vehicle. (Doc. 28 at ¶¶ 19, 21.) When Plaintiffs went to look at the vehicle, Family Motors gave them a Missouri safety inspection report stating that M+H Motors Group of Kansas City, Missouri, had completed a safety inspection of the vehicle on December 1, 2020, and that the inspection identified no defects. (*Id.* at ¶¶ 24-26.) Plaintiffs ultimately purchased the vehicle for $1,150. (*Id.* at ¶ 27.) Shortly after they purchased the vehicle, however, it had "significant problems on the road," and Plaintiff Caro had to pull it over and leave it "in a public place in or near the city of Merriam, Kansas." (*Id.* at ¶¶ 28, 29.) Plaintiff Caro contacted Family Motors and arranged for Family Motors to tow the vehicle to its location. (*Id.* at ¶¶ 30, 31.) Plaintiffs allege that Family Motors "claims to have performed some repairs on the Vehicle." (*Id.* at ¶ 31.) Plaintiffs then engaged counsel, who began advocating on their behalf. (*See id.* at ¶ 32.) Plaintiffs came to believe that (1) the vehicle should not have passed a safety inspection under Missouri law because of the size of a crack in the windshield, (2) Family Motors forged the safety inspection, and (3) no safety inspection had actually been conducted on the vehicle. (*Id.* at ¶¶ 33, 37-39.) After Family Motors rejected two offers from Plaintiffs to settle

3

the matter (*id.* at ¶¶ 35-36, 40, 43), Plaintiffs filed a lawsuit against Family Motors in Missouri circuit court.[4] (*Id.* at ¶ 52.)

On or around October 4, 2021, Plaintiffs made a "good faith effort to reach settlement" by sending a settlement demand to Family Motors for $11,000. (*Id.* at ¶ 67.) Shortly thereafter, Family Motors filed a motion in the state court action seeking leave to file an answer and counterclaim out of time. (*Id.* at ¶¶ 58, 59.) The state court granted the motion, and on November 19, 2021, Family Motors filed an answer and counterclaim seeking storage fees for more than $9,240 (calculated at $35 per day starting January 13, 2021, and continuing to accrue). (*Id.* at ¶¶ 58, 59, 72, 73.)

Plaintiffs allege in the instant lawsuit that Family Motors' counterclaim in the still-pending state court lawsuit for storage fees lacks factual and legal merit. Specifically, Plaintiffs allege that "[a]t no time did [Family Motors] ask Plaintiffs to agree to storage fees" or "tell Plaintiffs that [Family Motors] intended to charge storage fees." (*Id.* at ¶¶ 60, 61.) Further, Plaintiffs allege that they did not see either a sign or any notice at Family Motors stating that storage fees would be charged or stating the rate of any such storage fees. (*Id.* at ¶ 62.) Moreover, Plaintiffs allege that Family Motors did not mention storage fees or demand payment for storage fees "[a]t any time prior to October 4, 2021," including in response to Plaintiffs' demand letters. (*Id.* at ¶¶ 63, 64.) Instead, Plaintiffs allege, Family Motors' counterclaim "is calculated to match and eventually exceed Plaintiffs' Third Settlement demand," and is "an attempt to create an 'off-setting penalty' for Plaintiffs' good faith settlement demand." (*Id.* at ¶¶ 75, 77.)

Plaintiffs assert that on October 5, 2021, Family Motor's counsel in the underlying state court action communicated to Plaintiffs' counsel that Family Motors was "willing to not pursue [its] claim for vehicle storage fees against [Plaintiffs] provided that [Plaintiffs] dismiss [the pending state court action] with prejudice and remove their vehicle from [Family Motors]' premises." (*Id.* at ¶ 76.) Plaintiffs argue that Family Motors' counterclaim in the underlying state court action is intended to (1) "Retaliate against Plaintiffs for exercising their legal rights"; (2) "Increase the cost of litigation for Plaintiffs"; and (3) "Force Plaintiffs to dismiss their claims." (*Id.* at ¶ 81.)

---

[4] Plaintiffs' state lawsuit remains pending, with trial set for October 3, 2022. (*See* Doc. 55 at 1.)

## 2. Plaintiffs' Claim for Abuse of Process

First, Plaintiffs seek default judgment against Family Motors as to their claim for abuse of process under Missouri law. As the Court previously explained in adjudicating Defendant Yoakum-Kriz's motion to dismiss, a claim for abuse of process under Missouri law requires: "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 861 n.4 (8th Cir. 2002) (quoting *Stafford v. Muster*, 582 S.W.2d 670, 678 (Mo. banc 1979)).

As the Missouri Court of Appeals has recognized, "[t]he essence of a claim for abuse of process is the use of process for some collateral purpose." *Vescovo v. Kingsland*, 628 S.W.3d 645, 662 (Mo. Ct. App. 2020) (citation and quotation marks omitted). In other words, a claim for abuse of process must allege facts showing "process has been used to accomplish some unlawful end or to compel the opposite party to do some collateral thing which he or she could not be compelled to do legally." *Id.* at 663 (cleaned up). A plaintiff cannot be liable for abuse of process when he or she "has done nothing more than pursue [a] lawsuit to its authorized conclusion regardless of how evil a motive he possessed at the time." *Id.* (cleaned up). In other words, so long as "the action is confined to its regular function," a plaintiff is not liable for abuse of process "even if the plaintiff had an ulterior motive in bringing the action, or if the plaintiff knowingly brought the suit upon an unfounded claim." *Id.* (cleaned up). Stated differently, an abuse of process claim lies when a "claim is brought not to recover on the cause of action stated, but to accomplish a purpose for which the process was not designed." *Stone v. J&M Secs., LLC*, No. 4:20 CV 352 SPM, 2020 WL 5909788, at *8 (E.D. Mo. Oct. 6, 2020) (citation and quotation marks omitted); *see also Pipefitters Health & Welfare Trust v. Waldo R., Inc.*, 760 S.W.2d 196, 198-99 (Mo. Ct. App. 1988); *Herring v. Behlmann*, 734 S.W.2d 311, 313 (Mo. Ct. App. 1987) ("the foundation of a suit for abuse of process is that the previous claim was brought for a collateral purpose") (citation omitted).

In *Trustees of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, the Missouri Supreme Court reaffirmed that in the State of Missouri, abuse of process is a narrow cause of action. 585 S.W.3d 269 (Mo. banc 2019) ("*Clayton Terrace*"). There, the trustees of a subdivision filed suit against a property owner who had sold a lot in the subdivision to an entity, 6 Clayton Terrace, LLC ("6 Clayton Terrace"). *Id.* at 274. Among other things, the trustees sought a

5

declaration that the property owner had violated the subdivision's indentures in the sale of the lot. *See id.* at 274-75. The trustees admitted that "they chose to pursue their right to enforce the indentures only because they did not like what the purchaser was going to do with the property." *Id.* at 279. More specifically, by seeking a declaration against the property owner that the sale was void, the trustees sought to coerce 6 Clayton Terrace to abandon its request to subdivide the property. *Id.* at 278.

The property owner filed a counterclaim against the trustees asserting a claim for abuse of process under Missouri law, arguing, "the trustees filed [the declaratory judgment claim] against her for the sole and allegedly improper purpose of preventing 6 Clayton Terrace from constructing another residence on Lot 6." *Id.* at 275. The trial court entered judgment in the property owner's favor on her counterclaim for abuse of process, finding the action was filed for the improper purpose of coercing 6 Clayton Terrace from subdividing the lot. *See id.* at 276. The Missouri Supreme Court, however, reversed.

While the state supreme court agreed that the property owner had demonstrated the trustees had an *improper purpose* in pursing the declaratory action against her, the court found, at the same time, that she failed to demonstrate any *improper or illegal use* of process. Specifically, the supreme court found that notwithstanding the improper purpose of the lawsuit (i.e., to force 6 Clayton Terrace to step back from its plan to subdivide the lot), the property owner could not rely on the improper purpose or ulterior motive to satisfy the illegal-use element. As the state supreme court explained:

> To support [the illegal-use] element, [the property owner] and the circuit court relied on the same evidence used to support the second element – improper motive. That was error. The test for liability in an abuse of process claim is whether the process has been used to accomplish some unlawful end, or to compel the defendant to do some collateral thing which he could not legally be compelled to do. The ulterior motive may be inferred from the wrongful use made of the process, but the use itself may not be inferred from the motive. It is improper to conflate these two separate elements by inferring an improper use of process from bad motive.

*Id.* at 278 (citations and quotation marks omitted). The state supreme court found that the property owner had not shown the declaratory action filed against her constituted an improper use. The trustees "had the right to sue" the property owner to enforce the indentures, and the claim was brought "with the goal of setting aside the sale of property," which was "a purpose for which that cause of action is designed." *Id.* at 279. Thus, the trustees' admitted ulterior (or improper) motive,

6

and even that the trustees ultimately failed on the merits in their claim for declaratory judgment against the property owner, was of no relevance. *Id.*

In support of their motion for default judgment, Plaintiffs rely on *Owen v. Owen*, 642 S.W.2d 410 (Mo. Ct. App. 1982), for their argument that Family Motors' filing of the counterclaim for storage fees was an illegal or improper use of process – i.e., forcing them to drop the state lawsuit they filed against Family Motors. As in adjudicating Defendant Yoakum-Kriz's motion to dismiss Plaintiffs' abuse of process claim under Rule 12(b)(6) for failure to state a claim, the facts in *Owen* are illustrative here:

On September 13, 1979, Harley Owen filed a petition for dissolution of marriage against his then-wife, Mary Owen. *Id.* at 412. Almost four months later, on January 10, 1980, H.R., Harley's brother, filed a lawsuit against Mary and Harley for the assignment of shares of bank stock to him and repayment of a loan ("the *Owen* lawsuit"). *Id.* Mary filed a counterclaim against H.R. for abuse of process. *Id.* At trial, Mary produced evidence that at or near the time Harley's petition for dissolution was filed, he gave H.R. more than $70,000 in cash and merchandise. *Id.* at 414. The dissolution proceedings between Mary and Harley were pending "with apparently no settlement thereof in sight" when H.R. filed the *Owen* lawsuit against Mary. *Id.* H.R. told Mary shortly after filing the *Owen* lawsuit that "if she would accept $50,000 to terminate the dissolution proceedings," he would drop the *Owen* lawsuit he had filed against her and her then-husband, Harley. *Id.*

In *Owen*, the court of appeals found this evidence was sufficient to support the jury's verdict in favor of Mary on her counterclaim for abuse of process against H.R. Specifically, the court concluded the evidence showed that "H.R. wanted Mary to settle the dissolution action upon his or Harley's terms" and "[i]n exchange for Mary's capitulation, H.R. would dismiss his action," thus demonstrating "the true and basic purpose of H.R.'s lawsuit, i.e., to coerce Mary into settling the dissolution action in a manner which she could not be legally forced to do," that is, to "capitulate in the dissolution action upon the terms dictated by H.R." *Id.*

The improper purpose in *Owen* was resolution of the (collateral) dissolution action on a non-party's terms. Here, though, Plaintiffs assert the improper use of process is Family Motors' pursuit of a counterclaim for storage fees in the underlying lawsuit, albeit a counterclaim that Plaintiffs believe lacks any basis in fact or law. Plaintiffs contend this use of process was improper because Family Motors intended to force Plaintiffs to abandon their lawsuit and to retaliate against

7

Plaintiffs for filing the lawsuit. Notwithstanding any ulterior or improper *motive* in filing the counterclaim (i.e., that Plaintiffs would abandon their lawsuit, etc.) Plaintiffs have not alleged any improper *use* of process.

As *Clayton Terrace* explained, an abuse-of-process plaintiff cannot rely on an improper purpose to demonstrate improper use. *See Schlafly v. Cori*, __ S.W.3d __, 2022 WL 2959597, at * (Mo. banc July 26, 2022) (slip op.) (recognizing that in the context of an abuse of process claim, "improper use cannot be inferred from improper purpose") (citation omitted). Something more is required, and Plaintiffs have not alleged an improper use separate from any improper purpose or ulterior motive here.

The filing of a counterclaim itself – even one lacking a basis in fact or in law – "does not create a cause of action for abuse of process." *Armetta v. Dewalt*, No. 4:15CV1100 JCH, 2015 WL 7428538, at *5 (E.D. Mo. Nov. 23, 2015); *see Guirl v. Guirl*, 708 S.W.2d 239, 245-46 (Mo. Ct. App. 1986) ("The essence of abuse of process is not the commencement of an action without justification, but it is the misuse of process for an end other than that which it was designed to accomplish."); *see also R. Rowland & Co., Inc. v. Smith*, 698 S.W.2d 48, 52 (Mo. Ct. App. 1985) (affirming dismissal of counterclaim for abuse of process where "the instant case is not one where [plaintiff] is using a suit to which the [defendants] are not parties to extort money from them") (citing *White v. Scarritt*, 111 S.W.2d 18 (Mo. 1937 (Div. 1)); *Montgomery GMC Trucks, Inc. v. Nunn*, 657 S.W.2d 334, 336 (Mo. Ct. App. 1983) (finding no abuse of process where "[r]egardless of how evil truck dealer's motive may have been [in filing a writ of attachment], the evidence shows the truck dealer merely used legal process to attempt to collect an unpaid account secured by a lien on buyer's truck," an end that is "not unjustifiable or unlawful"); *cf. Guirl*, 708 S.W.2d at 245-46 (affirming judgment in favor of abuse-of-process plaintiff where abuse-of-process defendants maintained the cause of action after the abuse-of-process plaintiff tendered full payment of the notes, the equivalent relief the abuse-of-process defendants would have received had the court granted the relief they sought); *Nat'l Motor Club of Mo., Inc. v. Noe*, 475 S.W.2d 16, 24 (Mo. 1972) (Div. 2) (reversing dismissal of counterclaim for abuse of process where defendants alleged the plaintiff had filed three separate lawsuits against them in numerous states to harass them and drive them out of business; to force a third-party's agents or representatives to cease employment with defendant; to destroy competition and interfere with contractual relationships with others' rights, etc.). Indeed, Missouri Supreme Court Rule 55.32(b) specifically provides that

8

"[a] pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

Similarly, neither does Family Motors' offer to withdraw its counterclaim in exchange for Plaintiffs to do the same state a claim for abuse of process. *See also Clayton Terrace*, 585 S.W.3d at 279 n.5 (citing *Stafford v. Muster*, 582 S.W.2d 670, 679 (Mo. banc 1979) (finding improper use of process where circuit court charged a party with contempt to compel her to answer unrelated questions the other party had no legal right to ask); *Ritterbusch v. Holt*, 789 S.W.2d 491, 493-94 (Mo. banc 1990) (finding improper use of process where individual filed a criminal complaint for malicious damage of a car against another person in municipal court and offered to withdraw the criminal complaint if the other person would pay an alleged claim for damage to the car)). Recently, in *Schlafly*, the Missouri Supreme Court reversed the dismissal of a complaint asserting an abuse of process claim, finding the complaint "alleged [plaintiff] made an improper use [of a lawsuit seeking to void amendments to a trust] by pursuing ends that fall outside the scope of the action." 2022 WL 2959597, at *3. Specifically, in that case the plaintiff had alleged the initial lawsuit was filed against him for the defendant to "gain[] an advantage in other litigation, extort[] items of value, improv[e] her standing for claims regarding control of [a particular related entity], silencing [defendant], pressuring [defendant] regarding his positions with the two related funds, harassing him, and hindering his medical license." *Id.* Plaintiff's complaint is devoid of similar allegations against Family Motors that would "fall outside the scope of the action." Whether Family Motors' intended purposes in filing the counterclaim, Plaintiffs have alleged no similar improper use that falls wholly outside the scope of a counterclaim filed in a pending lawsuit by Plaintiffs against Family Motors.

If it were sufficient to state a claim for abuse of process by filing a counterclaim otherwise permissible under the rules of procedure, it would seem that any time a counterclaim is filed in a given lawsuit, the plaintiff could then state a claim for abuse of process. Missouri law requires something more, however. *See Armetta*, 2015 WL 7428538, at *5 (no abuse of process where the defendant has "merely employed the judicial process to accomplish an end intended by law, and [which it is] entitled to pursue . . . to its authorized end"). Finally, Plaintiffs have alleged no facts Family Motors filed the counterclaim to "retaliate" against them. *See also Schlafly*, 2022 WL 2959597, at *4 ("The test for improper use of process is whether a plaintiff has alleged, and can

later establish, a willful, definite act for unauthorized purposes or to achieve illegitimate objectives.")

Here, the crux of Plaintiffs' abuse of process claim appears to be their belief that the counterclaim lacks any basis in fact or in law. To the extent Plaintiffs prevail as to the counterclaim in the state court action and continue to believe the counterclaim lacked any basis in fact or in law, Plaintiffs may pursue a claim for malicious prosecution; but here, Plaintiffs have only asserted a claim for abuse of process, which is different. *See Bigfoot on the Strip, LLC v. Winchester*, No. 18-3155-CV-S-BP, 2019 WL 4144318, at *3-4 (W.D. Mo. Aug. 30, 2019) (granting plaintiff summary judgment as to defendant's abuse-of-process counterclaim where defendant only set forth evidence that plaintiff had no basis for asserting the underlying claim against her and had an improper purpose in doing so, and recognizing "[i]f this were sufficient to establish an abuse of process claim, the difference between abuse of process and malicious prosecution would be eliminated"); *Smith*, 698 S.W.2d at 52 (recognizing in dismissing counterclaim for abuse of process that if the counterclaimant is "ultimately exonerated from liability . . . and if they believe that Rowland sued them maliciously and without probable cause and that they were damaged, they may pursue a claim against Rowland for malicious prosecution"); *Wells v. Orthwein*, 670 S.W.2d 529, 532-33 (Mo. Ct. App. 1984) (pleadings that "appellants knew they had no justiciable claim against [the opposing party] when they filed their lawsuit, do not allege a cause of action for abuse of process; they sound more as a pleading in malicious commencement of a civil suit") (citations omitted).

For these reasons, the Court finds Plaintiffs' amended complaint fails to state a legitimate claim against Family Motors for abuse of process, and therefore Plaintiffs' motion for default judgment as to this claim is **DENIED**.

### 3. Plaintiffs' Claim for Violation of the KCPA

Plaintiffs also seek default judgment as to their claim against Family Motors for damages brought under the Kansas Consumer Protection Act, K.S.A. § 50-523, *et seq*. The KCPA prohibits deception and unconscionable acts or practices "in connection with a consumer transaction." Kan. Stat. Ann. §§ 50-626(a), 50-627(a). The KCPA provides examples of such prohibited deceptive acts or practices as including "the willful failure to state a material fact, or the willful concealment, suppression, or omission of a material fact." Kan. Stat. Ann. § 50-626(b)(3). As used within the KCPA, "consumer transaction" means "a sale, lease, assignment or other disposition for value of

10

property or services within this state . . . or a solicitation by a supplier with respect to any of these dispositions." Kan. Stat. Ann. § 50-624(c).

Plaintiffs' theory of liability under the KCPA is that Family Motors falsely claims in its counterclaim filed in the underlying state lawsuit that Plaintiffs owe more than $9,000 in storage fees. (Doc. 28 at ¶ 123; *see* Doc. 43 at 7 ("Defendant's false allegations that Plaintiff owed Defendant fees for 'storage' related to the purchase and/or presence of the Vehicle on Defendant's property were statements made 'in connection with' a 'consumer transaction.'").) As pleaded in Plaintiffs' second amended complaint, the "consumer transaction" underlying Plaintiffs' KCPA claim appears to rest on either Family Motors' solicitation of the vehicle for sale in Kansas by an online advertisement, or Family Motors' subsequent communication with Plaintiffs when they contacted Family Motors and arranged for Family Motors to retrieve the vehicle and "look into [Plaintiffs'] concerns" about the vehicle. (Doc. 28 at ¶¶ 19-22, 30; *see* Doc. 43 at 7 ("Defendant solicited Plaintiffs from Kansas regarding both the sale of the Vehicle and taking the Vehicle from Kansas to Defendant's place of business[.]").)

As to the latter, Plaintiffs allege no facts to support a finding that interaction or communication qualifies as a consumer transaction for purposes of the KCPA. In other words, Plaintiffs allege only that "[s]hortly after purchasing the Vehicle," they "contacted" Family Motors and "arranged for" Family Motors to "retrieve the Vehicle", after which Family Motors "towed the Vehicle to Defendant's location and claims to have performed some repairs on the Vehicle." (Doc. 28 at ¶¶ 30, 31.) These facts do not plausibly support a finding that this interaction was a consumer transaction as defined by the KCPA, involving the sale, lease, assignment, or other disposition for value of property or services within Kansas. Even if it did, however, Plaintiffs allege that Family Motors did not make any claim for storage fees (let alone a false claim) until October 4, 2021, when Family Motors filed the counterclaim in Missouri circuit court. (*See id.* at ¶¶ 61, 64.)

Thus, whether relying broadly on the initial solicitation or the subsequent communication by Family Motors with Plaintiff Caro after the car apparently broke down, Plaintiffs' amended complaint does not plausibly give rise to a claim under the KCPA against Family Motors. The false statement and unconscionable act on which their KCPA claim rests – Family Motors' claim that Plaintiffs owe it storage fees – is simply not a statement Family Motors made "in connection with" either the sale of the vehicle or the communication with Plaintiffs "shortly after" the sale

11

that led to Family Motors taking the vehicle to their premises. Instead, the allegedly false statement on which Plaintiffs' KCPA claim rests was – as Plaintiffs allege in their complaint – made for the first time in a counterclaim filed in the case then pending before the Missouri circuit court. In other words, the false statement identified by Plaintiffs here was made in connection with a pending lawsuit in Missouri Circuit Court filed against Family Motors by Plaintiffs. Plaintiffs have provided no support, and the Court is not aware of any legal authority, for the otherwise broad reading of the KCPA (particularly the requirement that the false statement and unconscionable act by "in connection with a consumer transaction") on which they rely in asserting this claim.

For these reasons, the Court similarly finds Plaintiffs' amended complaint fails to state a legitimate claim against Family Motors under the KCPA, and therefore Plaintiffs' motion for default judgment as to this claim is **DENIED**.

    **4.**  **Conclusion**

Because the Court finds Plaintiffs' amended complaint fails to state legitimate claims for abuse of process and for violation of the KCPA, Plaintiffs' motion for default judgment is **DENIED**, and this case is therefore **DISMISSED without prejudice**. *See Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991) (recognizing "a district court may sua sponte dismiss a complaint under Rule 12(b)(6) as long as the dismissal does not precede service of process"); *Joe Hand Promotions, Inc. v. El Borracho, LLC*, No. 4:11-CV-1637 (CEJ), 2012 WL 1134804, at *2 (E.D. Mo. Apr. 4, 2012) (dismissing complaint against defendant after denying plaintiff's motion for default judgment because the complaint failed to state a claim against that defendant).

  **B.**  **Plaintiffs' Motion to Stay**

In Plaintiffs' motion to stay, filed while Plaintiffs' motion for default judgment was pending before the Court, Plaintiffs seek a stay of the instant federal case until the state court action is concluded. (Doc. 55.) Plaintiffs seek a stay of the instant case so that to the extent they are successful regarding the storage-fees counterclaim in the state action, they may amend their complaint in this federal case to assert a claim for malicious prosecution against Family Motors and Ms. Yoakum-Kriz. (*See* Doc. 55 at ¶¶ 8-9.) At this juncture, however, Ms. Yoakum-Kriz has been dismissed as a party to this case. Additionally, the Court does not find that Plaintiffs are entitled to default judgment against the sole-remaining defendant, Family Motors, because they have failed to assert legitimate causes of action against Family Motors for abuse of process and violation of the KCPA, and thus dismisses Plaintiffs' complaint without prejudice. Fundamentally,

a motion to stay seeks to invoke the Court's discretionary power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 229 U.S. 248, 254 (1936). Under these circumstances, and particularly because the Court finds that Plaintiffs' motion for default judgment against the sole-remaining must be denied that this case should therefore be dismissed, the Court declines to exercise its inherent case-management power to stay this case. Plaintiffs' motion to stay (Doc. 55) is **DENIED**.

### III. Conclusion

After careful consideration and for the reasons explained above, the Court **ORDERS** that Plaintiffs' motion for default judgment against the sole-remaining defendant, Family Motors, Inc., (Doc. 43) and motion to stay (Doc. 55) are **DENIED**, and this case is **DISMISSED without prejudice**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: August 10, 2022